NOT FOR PUBLICATION                                    [Dkt. Ent. 25]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RONZELL MITCHELL. | Crim. Action No. 13-cr-00538<br><br>OPINION |

Appearances

Deborah J. Gannett
Office of the United States Attorney
970 Broad Street
Room 700
Newark, New Jersey 07102
     Attorney for the United States

Paul B. Brickfield
Brickfield & Donahue
70 Grand Avenue
River Edge, New Jersey 07661
     Attorney for Defendant

**BUMB**, United States District Judge:

This matter comes before this Court upon a motion for recusal pursuant to 28 U.S.C. § 455(a) and (b)(1), filed by Defendant Ronzell Mitchell (the "Defendant"). (Dkt. Ent. 25.) For the reasons set forth below, this motion is DENIED.

Defendant and his wife, Stephanie Mitchell (collectively, the "Mitchells"), pled guilty to one count of conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1341 and 1349. Prior to sentencing, the United States Probation Office

("Probation") drafted a presentence investigation report ("PSR") as to each defendant. Upon receipt of the draft PSR, dated November 4, 2013, counsel for Defendant Ronzell Mitchell submitted a 13-page memorandum detailing Defendant's factual objections to paragraphs 2, 11-13, 15-17, 20-24, 26, 28-31, 35, 36, 38, 40, 42, 44-47, 49, 50, 53, 59, 60, 63, 67, 69, 73, 74, 78-85, 86-92, 95-97, 98, 99, 133, 135, 139-41, 157, and 158 in his PSR. Thereafter, Probation issued a revised, final PSR, dated December 4, 2013. Defendant then filed a motion seeking a hearing "concerning [the] accuracy of the [PSR]," and arguing that, in light of the [multitude of] errors contained therein, "the Court should order that a new [PSR] be prepared." (See Dkt. Ent. 11-1 at 1.) Probation then issued a second revised PSR, dated February 18, 2014, to which Defendant continued to object as containing inaccurate statements. In his Sentencing Memorandum, Defendant incorporated by reference the arguments set forth in his prior motion, asserting his belief that the PSR "is inaccurate in several major ways" and "relate to setting forth for this Court an accurate understanding of what Mr. Mitchell did and did not do." (Sentencing Memorandum at 1-2.)

The Court held a sentencing hearing on March 27, 2014, at which it addressed and sustained several of the Mitchells' numerous objections to their PSRs. (See generally March 27, 2014 H'rg Tr. 4-21 (Ronzell Mitchell); see also id. at 29-34

(Stephanie Mitchell).) In particular, one of Defendant's objections went to the financial condition of his company, CertifiedCourtClasses.com, asking this Court to find that, "while the business is doing well and is profitable [grossing approximately $394,000 annually] . . . [there were] large expenses of this web-based company." (Sentencing Memorandum at 5.) Thus, Defendant's own objection required this Court to probe into the detailed operations of Defendant's business.

Responding to Defendant's objection, the Court raised certain questions that it had regarding Defendant's business. (Id. at 21-22 ("I have a lot of questions . . . .").) According to the PSR, while Defendant indicated the services provided by CertifiedCourtClasses.com had been approved "by a number of courts including the Western District of Texas Probation Office," the "arrangement" with the Western District of Texas had been discontinued.[1] (Feb. 18, 2014 PSR ¶ 133.) In addition, the PSR stated that the class curricula "are copyrighted and were written by a team of professionals based on an extensive amount of research." (Id.) However, the PSR also noted that Defendant had failed a GED test in 1995, and that it "appears defendant has neither a high school diploma nor a GED." (Feb. 18, 2014 PSR ¶ 132; see also id. ("His ability to attend college

---

[1] This is the only federal court that has used Defendant's services. (Feb. 18, 2014 PSR at 23 n.6.)

3

without proof of either a high school diploma or a GED is unknown.").) These assertions thus raised several red flags for this Court. Accordingly, because Defendant highlighted his successful business and sought the Court's consideration of his business activities in fashioning an appropriate sentence, the Court requested that Probation further investigate the Mitchells' business. (March 27, 2014 H'rg Tr. 28 ("I want to know more about this company . . . . And so Probation . . . will get some information and, you know, we'll continue the proceeding.").) Subsequent to this hearing, the Mitchells provided Probation with referral lists as well as a representative sample of emails concerning its operations. (See Mot. at 4.) Probation then issued revised PSRs[2] for each defendant in which it concluded that "[n]o issues or discernible discrepancies were noted." (May 27, 2014 PSR ¶ 133.) Despite this assertion, Probation did note that several representations on the website had been amended after this Court advised the parties of its concerns. (See, e.g., May 27, 2014 PSR at 27 n.6, 28 n.8.) Upon receipt of the third revised PSR, Defendant filed the instant motion for recusal.

Under 28 U.S.C. § 455,

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify [herself] in any

---

[2] Defendant has filed a Supplemental Sentencing Memorandum objecting to paragraphs 23, 24, 42, 60, 133, and 141.

4

> proceeding in which [her] impartiality might reasonably be questioned.
> (b) [She] shall also disqualify [herself] in the following circumstances:
> (1) Where [she] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

Beliefs or opinions that merit recusal must generally involve an extrajudicial factor rather than "facts which the judge has learned from [her] participation in the case." United States v. Rosenberg, 806 F.2d 1169, 1173 (3d Cir. 1986); United States v. Antar, 53 F.3d 568, 573 (3d Cir. 1995), overruled on other grounds, Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001) (citing Liteky v. United States, 510 U.S. 540, 555 (1994)). If the alleged bias stems from facts obtained during judicial proceedings, however, the Third Circuit has instructed that the alleged bias "must be particularly strong in order to merit recusal." Antar, 53 F.3d at 574. In other words,

> [t]he court must "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky, 510 U.S. at 555 . . . . Under § 455(a), "if a 'reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality' under the applicable standard, then the judge must recuse." Antar, 53 F.3d at 574 (quoting In re Larson, 43 F.3d 410, 415 (8th Cir. 1994)).

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 343 (3d Cir. 1998). This objective inquiry looks to "the reaction of the reasonable observer. If there is an appearance of partiality, that ends the matter."

5

Antar, 53 F.3d at 576 (citing Haines v. Liggett Grp. Inc., 975 F.2d 81, 98 (3d Cir. 1992); Lewis v. Curtin, 671 F.2d 779, 789 (3d Cir. 1982)).

In addition, 28 U.S.C. § 144 provides that:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned.

It is unclear whether Defendant is specifically seeking recusal under this section, but the parties agree that the applicable standard is the same. See, e.g., Liteky, 510 U.S. at 548; United States v. Furst, 886 F.2d 558, 582 (3d Cir. 1989).[3]

Here, Defendant argues that this Court's request for more information concerning his current business operations – which Defendant asked the Court to consider in fashioning an

---

[3] A motion for recusal under § 144 must be timely filed based upon the exercise of reasonable diligence. 28 U.S.C. § 144; Furst, 886 F.2d at 581 n.30; Cooney v. Booth, 262 F. Supp. 2d 494, 503-04 (E.D. Pa. 2003) ("It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." (citation omitted)), aff'd 108 F. App'x 739. Although Defendant's motion is based entirely upon comments made by this Court during the March 27, 2014 sentencing hearing, Defendant did not file the instant motion for recusal until June 25, 2014 – nearly three months later (and after the revised PSR was issued and the Court's concerns had been addressed). Because the Court finds that recusal is unwarranted on the current record, however, it need not decide whether Defendant's motion was timely filed.

6

appropriate sentence[4] – "create[s] the appearance of partiality" and would cause an objectively reasonable person to "conclude that the Court believes that the Defendants are just serial fraudsters." (Mot. at 10.) The Court finds Defendant's motion to be wholly without merit.

The concerns raised by the Court were based upon several "red flags" identified in the PSR, which caused this Court to inform the parties that it "really ha[s] a lot of questions" that it would require the Mitchells to answer before it sentenced them. (March 27, 2014 Tr. 24.) For example, the Court explained,

> I am concerned about what these defendants are representing to the public. And call me a little suspicious because they do have a fraud conviction, but when they are representing to the public that they have certified instructors who write their curricul[a] and that they are court approved in all states and they are getting referrals from judges and probation departments, [its] just raising a lot of red flags in my mind. And then these individuals have, throughout the PSR have told me about all of the difficulties that they have had. They don't seem to have the

---

[4] See Sentencing Memorandum at 7-8 ("The Mitchells have now created a legitimate and successful business called CertifiedCourtClasses.com . . . . The business will likely fail and be forced to close if the Mitchells are both incarcerated. It is the sole means of support for the family. The Mitchells rely on the income of this business to pay for the family's monthly expenses, medical bills, Kayton's college tuition and the expenses for their three minor children, including counseling services and psychological services. The business is home-based and it is not necessary for the Mitchells to leave their home in order for them to manage their business."); id. at 15 (requesting staggered sentences to "allow the couple to keep their web-based business alive and supporting the family").

> appropriate education to be giving anger management, drug and alcohol classes, parenting classes, prostitution classes and sexual harassment classes, and I could go on. So I really have a lot of questions. . . .

(Id. at 22-23.) In other words, Defendant informed Probation (and the public) that the classes were created by professionals, presumably including Defendant, yet Probation could find no evidence that Defendant had even graduated from high school thus causing the Court to inquire, inter alia, as to the identity of the alleged professionals creating the curricula.

It is clear from a complete, fair, and unabridged reading of the transcript that the Court simply required more information from the Mitchells so as to satisfy its duty to consider a full and accurate record. (See generally March 27, 2014 Tr. 22-27.) Based on the Court's colloquy, a reasonable observer could have concluded only that the Court had "questions" or "concerns" – not an unchangeable bias or prejudice. Indeed, the Court emphasized several times that it intended to review any additional evidence fairly and objectively. Defense counsel explained that he had experience with legitimate online courses of the type offered by the Mitchells' business to which the Court responded, "So if that's the case, Mr. Brickfield, then these defendants will have no difficulty in showing to Probation who these certified instructors are, how these classes are run." (Id. at 25; see

8

also id. at 26 ("I think I have a duty to know whether or not these individuals . . . are providing these services that the customers are then showing to courts. I think it behooves me to do that. And hopefully I'll be satisfied."); id. at 68 (same)[5].) Moreover, the Court provided the Mitchells with the opportunity to submit relevant evidence and to explain the assertions made on their website. See, e.g., March 27, 2014 Tr. 25, 23 ("And the defendants are going to have to answer more questions for me."); April 7, 2014 Tr. 7-8 (noting that "[i]f [] what the Mitchells mean by [the statements regarding referrals] is that we get clients from all over the country who are in front of all different kinds of judges and deal with all different kinds of probation officers and they want to call that a referral, then just tell me that."); id. at 9-10 (noting that if the Mitchells have referral lists, they should turn them over and, if they don't, the Court will "have to go on what your clients are representing" and "will ask [the Mitchells] questions during allocution about, you know, who do they do business with").[6] The

---

[5] See also id. at 66 (providing Mitchells with opportunity to explain representations and submit evidence); April 7, 2014 Tr. 7, 10 (same).

[6] The Court later clarified what information it was seeking and, upon the Mitchells' request, narrowed some of Probation's requests for information so as to minimize the burden on Defendants. See April 7, 2014 Tr. 10 ("I'm not going to require you to [go] through 50 some thousand e-mails. . . . If there are lists out there, okay; and if there are no lists, okay, and I'll have to go on what your clients are representing and I will ask

9

Court could not have stated its position more clearly than when it reserved on Defendant's objection to Paragraph 133: "**I don't know what that paragraph [on CertifiedCourtClasses.com] is going to say because I want Probation to give me more**." (March 27, 2014 Tr. 23 (emphasis added).)

Defendant also points to the Court's "reference to consulting unnamed probation officers and courts that United States Probation has spoken to at the direction of the Court"[7] as giving the appearance of bias. (Reply, Dkt. Ent. 29, at 4.) Defendant misconstrues this Court's statement. According to the PSR, Defendant informed Probation that his services had been "approved by a number of courts including the Western District of Texas Probation Office" but that the "arrangement has been discontinued." (Feb. 18, 2014 PSR ¶ 133.) The Court sought further elaboration and requested that Probation reach out to the Western District of Texas for clarification. Importantly, in accordance with the Court's practice and obligation to disclose

---

them questions during allocution about, you know, who do they do business with. . . . But I'm not going to have them go through every single e-mail because, first of all, I think it's onerous, it's not – it's just not required."); id. at 11 (agreeing that representative sample of referrals would satisfy the Court and be less burdensome to Defendants); id. at 13, 7.

[7] Specifically, the Court stated, "And so I asked the Probation Officer, well, who are these judges and probation officers? I had my Probation Officer call. They are not familiar with these individuals, this company." (March 27, 2014 Tr. 22:14-17.)

the information on which it relies to sentence a Defendant, the Court notified Defendant and counsel of this fact during the March 27 hearing and provided Defendant with an opportunity to respond. Thus, to the extent Defendant is arguing that there is information unknown to Defendant that this Court may utilize in sentencing Defendant, the Court has gone to great efforts to explicitly highlight the areas of concern and to provide the Mitchells with the opportunity to fairly respond.[8]

Moreover, Defendant repeatedly objected to the PSR drafts and expressed his concern that this Court have an "accurate" history of Defendant prior to sentencing. The Court agrees it must have an accurate picture of Defendant, which is why it is important for Probation to provide "the fullest information possible concerning the defendant's life and characteristics." See Williams v. New York, 337 U.S. 241, 246-47 (1949). Indeed, for this reason, the Court habitually raises issues regarding discrepancies or deficiencies ("red flags") in the record that

---

[8] By Defendant's logic, the Court finds itself in a catch 22 situation: by disclosing its concerns and seeking further information, this Court is purportedly demonstrating bias against Defendant; but, on the other hand, by failing to disclose to the parties (including Defendant) the Court's concerns or the evidence on which those concerns are founded, the Court is acting unfairly. Defendant cannot have it both ways. Of course, here, the Court expressed its concerns and explained to the parties the reasons behind those concerns. More importantly, it afforded Defendant the opportunity to address those concerns.

must be resolved before it pronounces a sentence. It is hard to see how a defendant could challenge a court's efforts at ensuring a fair and accurate sentencing record before it pronounces its sentence.

Defendant's business is not the only subject matter on which the Court sought further information not only from Defendant, but the Government as well. Although Probation found approximately 23 victims (Feb. 18, 2014 PSR ¶ 41), both the Government and Defendant stipulated to Defendant's involvement with fewer than 10 victims. In fact, the parties agreed that this case involved only a single victim – the Department of Education. (March 27, 2014 Tr. 34, 61-62, 84.) Despite the parties' agreement, the Court requested additional evidence regarding the number of victims, stating:

> And I find myself in this position, . . . where the government and the defendants stipulate to a certain guideline level and then the facts come out in the presentence report and they do not back that stipulation up. . . . But that's why it's important for Probation to get an answer to that question, whether or not these 66 individuals, they are true individuals with true Social Security numbers that match them . . . .

(April 7, 2014 Tr. 21-22.) This request underscores the Court's repeated attempts to fairly address the inconsistencies between the evidence and the parties' positions as they relate to the factors the Court must address in fashioning a sentence.

Fundamentally, a court's request for additional information surrounding assertions contained in the PSR, or even its skepticism as to the accuracy of the PSR – especially where a defendant has already asserted numerous factual objections to the PSR – cannot provide a basis for recusal. To hold otherwise would unduly chill the Court's responsibility to ensure a full, fair, and accurate picture prior to sentencing a particular defendant. As the United States Supreme Court recently confirmed:

> This Court has long recognized that sentencing judges "exercise a wide discretion" in the types of evidence they may consider when imposing sentence and that "[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." Williams v. New York, 337 U.S. 241, 246–247, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949). Congress codified this principle at 18 U.S.C. § 3661, which provides that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct," and at § 3553(a), which sets forth certain factors that sentencing courts must consider, including "the history and characteristics of the defendant," § 3553(a)(1).

Pepper v. United States, 131 S. Ct. 1229, 1235-36 (2011); Alleyne v. United States, 133 S. Ct. 2151, 2163 (2013) (recognizing "broad sentencing discretion, informed by judicial factfinding").[9] Federal Rule of Criminal Procedure 32 also

---

[9] Id. ("See also United States v. Tucker, 404 U.S. 443, 446, 92 S. Ct. 589, 30 L.Ed.2d 592 (1972) (judges may exercise sentencing discretion through 'an inquiry broad in scope,

13

recognizes this authority, requiring that Probation conduct an investigation and submit to the Court a PSR that contains certain information such as "any other information that the court requires, including information relevant to the factors under 18 U.S.C. § 3553(a)."[10] Fed. R. Crim. P. 32(d)(2)(G). Here, as the record clearly reflects, the Court is seeking additional information pursuant to its duty to consider all relevant information and to ensure the accuracy of the PSR prior to fashioning a sentence. It has provided the Mitchells with the opportunity to present any and all information they deem necessary, and thus the Court does not find that recusal is warranted. See, e.g., Liteky, 510 U.S. at 556 (recusal unwarranted where judge used "anti-defendant tone," cut off relevant testimony, repeatedly admonished defense counsel, and

---

largely unlimited either as to the kind of information [they] may consider, or the source from which it may come'); Williams v. New York, 337 U.S. 241, 246, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949) ('[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law').").

[10] Under 18 U.S.C. § 3553(a), the Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence to reflect the seriousness of the offense, provide adequate deterrence, protect the public, and provide defendant with needed training or services; the kinds of sentences; the sentencing range; policy; "the need to avoid unwarranted sentence disparities"; and restitution.

displayed animosity toward defendant); United States v. Young, 45 F.3d 1405, 1414 (10th Cir. 1995) (recusal unwarranted where judge opined during scheduling conference that it was "obvious" defendant would be convicted). For these reasons, an appropriate Order will issue herewith.

Date:  July 29, 2014

                                            s/Renée Marie Bumb
                                            RENÉE MARIE BUMB
                                            UNITED STATES DISTRICT JUDGE